UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) |
| --- | --- |
| v. | ) CASE NO. 1:10-CR-51 |
| WILLIAM HAGLER | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is Defendant, William Hagler's ("Hagler" or "Defendant") "Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" filed on November 25, 2013. [DE 303]. Although he filed his Petition over a year ago, Hagler did not supply any factual basis or legal grounds for his petition. Accordingly, the Court extended Hagler's time to file a supporting memorandum to his original petition. [DE 317]. After being granted a further extension of time, Hagler filed his "Memorandum of Law and Arguments in Support" on May 27, 2014. The Government responded on June 23, 2014 to which Hagler replied on August 8, 2014. The Court is further in receipt of numerous letters/supplemental filings from Hagler, all of which have been considered in the disposition of his present motion. *See DE* 307, 317, 330, 342. For the following reasons, Hagler's Motion will be DENIED.

**PROCEDURAL BACKGROUND**

On June 29, 2010, a single count Criminal Complaint was filed against Hagler alleging a violation of 18 U.S.C. §2113(a) and (d) in connection with his participation in the attempted armed

1

robbery as set forth in the Criminal Complaint.[1] Thereafter, on July 28, 2010, a single count Indictment was returned against Hagler and his brother, Shawn Hagler, charging them with a violation of 18 U.S.C. § 2118 in connection with their participation in the attempted armed robbery of the National City Bank in Woodburn, Indiana on August 15, 2000.

Hagler filed a flurry of pretrial motions, some *pro se* and some through counsel, and wrote numerous letters to the Court. Throughout his pretrial filings, including his own letters, Hagler repeatedly took issue with the validity of the DNA evidence against him and declared that the evidence must be falsified because he "was not present" at the scene of the crime. *See* DE 290, fn. 2 (outlining and quoting docket entries reflecting Hagler's consistent and repeated claims of innocence both before and after trial as well as statements by him that he was not present at the scene of the crime). He proceeded to trial[2] and, on December 16, 2010, was convicted on the sole count of the Indictment.[3] Thereafter, a presentence investigation report was prepared and a

---

[1] Hagler was originally indicted on October 28, 2009 on charges of bank robbery by force or violence and/or aiding and abetting the same in violation of 18 U.S.C. §§2113(a) and 18 U.S.C. §2. (Indictment, 1:09-CR-104). The bank robbery at issue occurred nearly ten years ago, on August 15, 2000. Only after the Defendant's DNA was linked to evidence taken from the bank robbery was he indicted on the charges above. Given the nearly ten year gap between the offense and his Indictment, Hagler moved for dismissal of the Indictment claiming that it was filed outside the five year statute of limitations in 18 U.S.C. §3282. Hagler also filed a motion to dismiss contending that 18 U.S.C. §3297, which tolls the statute of limitations otherwise provided in §3282 under certain circumstances, is unconstitutionally vague. After an evidentiary hearing was held on these motions and briefing was scheduled, the Supreme Court decided *United States v. Bloate*, 130 S.Ct. 1345 (2010), wherein the Court clarified certain periods of excludability under the Speedy Trial Act, 18 U.S.C. §3161. Hagler then filed a motion asserting that under *Bloate*, the Speedy Trial Act was violated in his case. On June 28, 2010, the undersigned granted that motion **without** prejudice. Because the indictment was dismissed, no ruling was made on Hagler's other motions. Thereafter, a new Criminal Complaint was filed against Hagler alleging again a violation of 18 U.S.C. §§2113 (a) and (d) relating to the same robbery that was the subject of the indictment in 1:09-CR-104. He was indicted on July 28, 2010 in the present cause # 1:10-CR-51.

[2] Shawn was not arrested until November 11, 2010 and thus, Hagler was tried first.

[3] A full and accurate recitation of the facts of this case can be found in the Seventh Circuit's decision, *Hagler*, 700 F.3d at 1094-1096. The Seventh Circuit concisely summarized the facts as follows:

sentencing date was set in the case.

In the meantime, the Government's case against Hagler's brother, Shawn, was in full motion. On February 8, 2011, in preparation for Shawn's trial, the Government filed a motion to withdraw two sweatshirts that had been admitted as exhibits at Hagler's trial to conduct DNA testing on them for Shawn's trial. [DE 106]. The Court granted the request and the exhibits were tested. Upon notification of the DNA results, Hagler filed a Motion for a New Trial pursuant to Fed.R.Crim.P. 33 wherein he asserted that the results contained in the Certificate of Analysis exculpated him since, according to Hagler, none of his DNA was found on the sweatshirts. On June 2, 2011, the undersigned denied the Motion for New Trial [DE 147] noting that contrary to Hagler's assertions in his motion, the DNA Certificate of Analysis was inconclusive "as to whether DNA evidence found on the sweatshirt is attributable" to Hagler or Shawn. Thus, the Court concluded that "no evidence at all was yielded from this testing," and, even if the evidence did constitute new evidence, it would not have affected the jury's verdict since "the inconclusive results of DNA evidence" did

---

> At Hagler's trial, the government presented several witnesses to the robbery. Although they disagreed on some of the details, the witnesses generally identified the perpetrators as two black males wearing dark clothing and Halloween masks. Four witnesses also described the getaway car as a white, four-door sedan consistent with George Townsend's Pontiac, and one specifically identified Townsend's car as the one used in the robbery. A resident of the trailer park testified that, on the morning of the attempted robbery, he saw two black males drive into the trailer park in a dark car, transfer some materials into a white car, and drive off. Stacy Gray, a physical security consultant for the bank, testified that the bank was FDIC insured at the time of the robbery. The government also presented testimony from Connie Evans Hanley, the mother of two children by Hagler. Hanley testified that, around December 1998, she and Hagler were talking in the Woodburn trailer park together when Hagler mentioned how easy it would be to rob a bank in Woodburn because the town was so lightly policed. Finally, the government introduced evidence that Hagler's fingerprints were found on the getaway car and that his DNA was found inside it. Hagler elected not to present evidence of his own, and the jury convicted him of one count of attempted bank robbery.

*Hagler,* 700 F.3d at 1096.

3

not "cast doubt on the fact that [Hagler's] fingerprints and hair were found on other items connected to the bank robbery." [DE 147].

On August 29, 2011, the Court sentenced Hagler to a term of 150 months imprisonment followed by 3 years of supervised release. He appealed. Hagler's conviction and corresponding sentence were affirmed by the Seventh Circuit Court of Appeals in *United States v. Hagler*, 700 F.3d 1091 (7th Cir. 2012) [DE 236]. On appeal, Hagler challenged the timeliness of his prosecution, the sufficiency of the evidence against him and this court's decision not to grant him a new trial on the basis of the additional DNA testing. The Seventh Circuit rejected Hagler's timeliness arguments concluding that the statute of limitations had not expired at the time of Hagler's indictment and the pre-indictment delay did not prejudice his case. With respect to the sufficiency of the evidence argument, Hagler's claim on appeal was limited to whether the Government proved that the bank was federally protected at the time of the robbery. This claim, too, was rejected. Finally, the Seventh Circuit upheld this Court's decision denying Hagler's new trial motion writing:

> Hagler's fingerprint was found outside the getaway car, and his DNA was found inside it. Both of these facts were powerful evidence against him. And, contrary to Hagler's suggestion, the introduction of further, inconclusive DNA testing would not have undermined this evidence...
>
> Hagler's DNA and fingerprints were strong proof of his guilt. The mere fact that his DNA was not found in *greater abundance* does little to undermine this proof. Thus, we do not think that it would probably result in an acquittal if presented to a jury, and we certainly do not think that the district court abused its discretion in so holding.

*Hagler,* 700 F.3d at 1101.

Thereafter, Hagler's counsel filed another Motion for New Trial in this Court asserting more

newly discovered evidence and that a trial witness perjured herself.[4] The undersigned denied this motion. The present motion followed with Hagler arguing the following grounds to attack his conviction and sentence: (1) ineffective assistance of counsel; (2) due process violations; (3) statute of limitations violations; (4) insufficient evidence; (5) false evidence and perjured statements; (6) improper application of the sentencing guidelines; and (7) double counting with respect to his sentence.

## **DISCUSSION**

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir.1996). In order to proceed on a habeas corpus motion pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.; Belford v. United States,* 975 F.2d 310, 313 (7th Cir.1992), *overruled on other grounds by Castellanos v. United States,* 26 F.3d 717 (7th Cir.1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

---

[4]Hagler challenged hairs taken from a pumpkin mask found in the getaway car and asserted that the Government failed to disclose the existence of non-defendant human hair found on the mask. The undersigned concluded that Hagler misinterpreted the Certificate of Analysis and, once again, even if the Court adopted his interpretation, he failed to meet his burden to receive a new trial under Fed.R.Crim.P. 33.

5

*Belford,* 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States,* 75 F.3d 1174, 1177 (7th Cir.1996).

In assessing Hagler's motion, the Court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't,* 95 F.3d 548, 555 (7th Cir.1996); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *Brown v. Roe,* 279 F.3d 742, 746 (9th Cir.2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir.1985)). In other words:

> The mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Barnett v. Hargett,* 174 F.3d 1128, 1133 (10th Cir.1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991)). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Id.*

Application of these responsibilities here, however, do little to aid Hagler's cause. With one exception, the grounds set out by Hagler in his §2255 petition are all procedurally defaulted and barred from collateral review. Each of his claims, with the exception of his claim of ineffective assistance of counsel, was either presented on direct appeal or could have been presented on appeal and Hagler has not demonstrate cause for the procedural default and actual prejudice from the failure to present these claims on appeal. *See Sandoval v. United States,* 574 F.3d 847, 850–51 (7th Cir.2009). His claims of timeliness and due process violations were presented and rejected on direct appeal; his claims relating to sufficiency of the evidence and perjured witness statements could have been presented on direct appeal and were not; and finally, his issues with the calculation of his sentence were claims that could have been made on direct review. As a result, the Court looks only to Hagler's ineffective assistance of counsel claim which is appropriately brought for the first time in a §2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504 (2003), *United States v. James*, 635 F.3d 909, 916 (7th Cir.2011).

Claims of ineffective assistance of counsel are governed by the 2–pronged test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffective assistance of counsel claim, Hagler must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States,* 7 F.3d 629, 633 (7th Cir.1993) (quoting *Strickland,* 466 U.S. at 688, 690); *see also Hardamon v. United States,* 319 F.3d 943, 948 (7th Cir.2003); *Anderson v. Sternes,* 243 F.3d 1049, 1057 (7th Cir.2001). The second *Strickland* prong requires defendant to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

7

*Strickland,* 466 U.S. at 694. Regarding the deficient-performance prong, great deference is given to counsel's performance, and the defendant has a heavy burden to overcome the strong presumption of effective performance. *Strickland,* 466 U.S. at 690; *Coleman v. United States,* 318 F.3d 754, 758 (7th Cir.2003) (citation omitted). A defendant must establish specific acts or admissions that fall below professional norms. *Strickland,* 466 U.S. at 690. If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id.* at 697.

The Seventh Circuit has held that "[o]nly those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." *Canaan v. McBride,* 395 F.3d 376, 385–86 (7th Cir.2005). Additionally, trial counsel "is entitled to a 'strong presumption' that his performance fell 'within the range of reasonable professional assistance' and will not be judged with the benefit of hindsight.' " *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir.2007) (citing *Strickland,* 466 U.S. at 689).

In his petition, Hagler asserts claims against both his trial counsel and his appellate counsel. With respect to trial counsel, he states that his trial counsel never explained to him the advantages and disadvantages of going to trial and that counsel failed to advance specific arguments he directed counsel to argue. He asserts a similar charge against appellate counsel – that is, that counsel did not brief or present on appeal the issues he directed counsel to appeal. Attached to Hagler's petition is a *pro se* declaration wherein he avers under oath that (1) he was never offered a formal plea agreement; (2) had he been offered an agreement he would have pled guilty; and (3) he directed both appellate and trial counsel to make certain arguments on his behalf and they did not.

Turning first to his contention that counsel was ineffective for failing to advise him to enter into a plea agreement or to pursue plea negotiations on his behalf, Hagler must demonstrate his

8

counsel was deficient by failing to properly advise him on the potential for a plea of guilty, and demonstrate prejudice by showing a reasonable probabilty that he would have pled guilty but for his attorney's alleged error.

When assessing counsel's performance in this case, it is critical to note that Hagler adamantly denied that he was present at the bank robbery for which he was convicted throughout the entirety of his case and post-trial. He wrote numerous letters to the undersigned both before and after his trial declaring his innocence and stating that he was not involved in the bank robbery. These letters were filed in the record record in the case. In DE 27, for instance, Hagler labeled the letter "letter of Innocent" in which he states "I am an innocent man thats fight [sic] for his life & freedom..."); in DE 45 he wrote "[M]e and my co-defendant are **innocent**." [emphasis in original]; in DE 48, Hagler stated "Your Honor, I am an innocent man." There are many more such statements. *See* DE 63 (indicating he and his co-defendant are innocent); DE 99 at p. 1: ("We are trying to prove to you and the courts that we are (2) innocent brothers that had no involvement in this crime."); DE 99 at p. 4: ("...William Hagler and Shawn Hagler are not the individuals that committed this crime at hand"); DE 105 ("We pray that you understand our persist [sic] in letter writing to prove we are Innocent."); DE 124 ("...William and Shawn Hagler are 'Innocent' in this unusual and 10 year old 'cold case.'"); DE 125 (letter stating that he and his brother "truly didn't commit" this crime). All this said, given Hagler's consistent position and multiple declarations to the Court that he did not commit the charged crime, it would have been objectively unreasonable for counsel to suggest to Hagler that he plead guilty either straight up or pursuant to a plea agreement. Indeed, the record is absolutely clear that at no time prior to trial (or thereafter until now in a post-conviction relief motion) was Hagler ready, willing, or able to acknowledge for all the

9

world his responsibility for the bank robbery with which he was charged.[5] Simply put, trial counsel did not fall below an objectively reasonable standard and thus, was not deficient in his representation.

Besides the absence of deficient performance by counsel, Hagler attempts to assert prejudice from trial counsel's performance with his own declaration. [DE 339]. Hagler now, in hindsight and **after** his brother accepted a plea agreement from the Government[6] that resulted in a substantially reduced sentence for him, claims he would have pled guilty if he had been advised to do so by counsel, if counsel had explained to him the consequences of going to trial, and if he would have known that he could receive an offense level reduction by pleading guilty. *See Declaration,* ¶s 2-4. He seeks an evidentiary hearing on this issue.

In *Brooks v. United States,* 248 Fed. Appx. 77, 82 (11th Cir.2007) (per curiam), the Eleventh Circuit rejected a petitioner's argument that he was entitled to an evidentiary hearing on his § 2255 claim after he alleged that had he been advised that he faced a life sentence without the possibility of parole he "probably" would have accepted a plea agreement offered by the government. *Brooks,* 248 Fed. Appx. at 79. The Eleventh Circuit found Brooks had failed to satisfy the prejudice prong. The court explained as follows:

---

[5]It is also important to note that Hagler was in constant contact with the Court via letters he mailed to the undersigned and which the Court provided to counsel and filed in the record. Hagler complained about a variety of items in those letters but never in any of the letters did he complain that he was not offered a plea agreement or that counsel had failed to pursue plea negotiations on his behalf. Indeed, on this record, it appears clear that plea negotiations would have been futile. The Government had physical DNA and fingerprint evidence of Hagler's presence at the crime scene, thereby creating a strong, albeit circumstantial case against him. Likewise, from Hagler's letters and courtroom demeanor, even had the Government offered a plea agreement to Hagler, there is nothing to suggest he would have welcomed a deal or that the Court, with knowledge of his claims of innocence would have accepted it.

[6]Shawn received a sentence, pursuant to the terms of his plea agreement, of 36 months imprisonment.

> The record reflects that throughout the entire case, Brooks had not expressed any desire or intent to plead guilty. In his declaration, Brooks asserted that he was wrongly accused and the testimony of his codefendants that implicated him in unsuccessful attempts to purchase cocaine and marijuana was false. He also said that had he been allowed to testify at trial, he would have explained that he was not aware of any drug deals and did not know most of his codefendants. Even in this Court, he says only that he "probably" would have pled guilty. On this record, which includes Brooks's adamant and consistent assertions of innocence and his skepticism regarding the government's plea offer, we cannot conclude that but for either of the instances of alleged ineffective assistance, Brooks would have pled guilty, or that even if he did, the district court would have accepted the plea.

*Id.* at 82. Here, Hagler attempts through a self-serving declaration to rewrite the record in this case. Like in *Brooks*, Hagler made multiple, repeated statements to the Court that he was not guilty, evidence against him was fabricated, and he had no involvement with the bank robbery. His belated, after the fact effort to assert he would have pled guilty is simply not enough to overcome the heavy record in this case that belies his current assertions. Similarly, Hagler fails to allege reasonably specific, non-conclusory facts that there is a reasonable probability that but for his counsel's errors the result of his case would have been different. He does not state or provide any other evidence that he ever expressed an interest in pleading guilty or even considered doing so prior to filing his § 2255 motion. Accordingly, he has not made a showing sufficient to warrant an evidentiary hearing or to establish the prejudice prong of the *Strickland* case. See *Scott v. United States,* 325 Fed. Appx. 822, 825 (11th Cir.) (per curiam) (finding petitioner had failed to establish prejudice when he argued a guilty plea would have resulted in a lower sentence and offered "after the fact testimony concerning his desire to plead.").[7]

---

[7] Moreover, had Hagler decided to plead guilty, he would have had to satisfy the undersigned that he was, in fact **guilty**, of the charged conduct in order for the Court to accept a plea of guilty. In light of the record, this would have been a difficult hurdle for Hagler to overcome as he would have had to admit to the criminal conduct and disavow all of the statements previously made to the Court.

11

Next the Court turns to Hagler's assertions against both trial and appellate counsel that they did not argue the specific arguments he asked them to argue before the trial and appellate courts. The court begins with his contentions against trial counsel.

To prevail on his assertions that counsel was ineffective by not making arguments that Hagler requested him to make, Hagler must show that "counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." *Massaro v. United States,* 538 U.S. 500 (2003); citing *Strickland,* 466 U.S. at 688-94, 104 S.Ct. 2052. Defense counsel is "strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment." *United States v. Traeger*, 289 F.3d 461, 470 (7th Cir.2002). Courts "presume that counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption." *Id.* at 472.

Here, Hagler claims he asked trial counsel to argue that the guideline enhancement he received for using a firearm during the course of the bank robbery was unconstitutional in light of his conviction under §2113(d). In particular, Hagler argues that the sentencing enhancement he received for using the firearm during the bank robbery and his statutory conviction for armed bank robbery constitute impermissible punishes him twice for the same conduct.

It is true that both the Sentencing Guidelines and an independent criminal statute, 18 U.S.C. § 924(c)(1), enhance the penalty when a person uses a gun while committing a federal crime. The penalty under § 924(c) is 5 years for the first offense and 20 years for each further offense. See *Deal v. United States,* 508 U.S. 129 (1993). This penalty must be imposed consecutively to any other term of imprisonment. The Guidelines, by contrast, add offense levels. For bank robbery, the addition is 6 levels for using a firearm. U.S.S.G. § 2B3.1(b)(2)(B). A conviction under § 924(c) precludes the

enhancement the Guidelines otherwise would provide. U.S.S.G. §2K2.4, comment (n.4). "Thus the prosecutor's decision whether to bring a charge under § 924(c) or settle for the higher sentence under the Guidelines can have a large influence on the total time to be served." *United States v. Mrazek,* 998 F.2d 453, 454 (7th Cir. 1993); see also Sentencing Guidelines Amendment 599 (clarifying that enhancement applies to offenses other than §924(c)).[8]

In this case, the Government did not independently charge Hagler under §924(c). However, at sentencing, the probation officer assessed, and the Government sought to include, the 6 level enhancement for use of the firearm during the bank robbery. The effect of this enhancement was to increase Hagler's sentence. Hagler contends this is an erroneous application of the guidelines and asserts that despite his request to counsel to argue the point at sentencing, counsel did not, and thereby was ineffective.

Counsel did not raise the argument and, for good strategic reason. It has been previously raised and rejected. See *United States v. Cross,* 387 F. App'x 632, 633 (7th Cir. July 23, 2010) (finding no double counting when the court increased the offense level for the first three bank robbery counts under U.S.S.G. § 2B3.1(b)(2)(C) but not the fourth robbery since the defendant was also sentenced under 924(c) for that robbery). That said, it is not ineffective assistance to raise

---

[8]Amendment 599 became effective on November 1, 2000, and intended to clarify "under what circumstances defendants sentenced for violations of 18 U.S.C. § 924(c) in conjunction with convictions for other offenses may receive a weapon enhancements contained in the guidelines for those offenses." U.S.S.G., App. C, Vol. II, amend. 599 (2003) (reason for amendment). Amendment 599 "directs that no guideline weapon enhancement should be applied when determining the sentence for the crime of violence or drug trafficking offense underlying the 18 U.S.C. § 924(c) conviction, nor for any conduct with respect to that offense for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." The reasons for Amendment 599 are to "avoid unwarranted disparity and duplicative punishment" and also to "conform application of the guideline weapon enhancements with general principle guidelines." *Id.*

13

losing arguments; nor can Hagler demonstrate any prejudice from the absence of counsel's argument.

The same is true for Hagler's arguments relating to appellate counsel. Here too, Hagler argues that he requested appellate counsel to argue the double counting issue. To overcome the presumption that counsel acted propertly, the petitioner must present evidence that "appellate counsel's failure to raise a claim was [not] an exercise of 'sound appellate strategy.' " *Id.* at 727. Reasonable appellate strategy requires [an] attorney to limit appeal to issues most likely to succeed. *Gee v. Groose,* 110 F.3d 1346, 1352 (8th Cir.1997). "[E]ffective appellate advocacy often entails screening out weaker issues." *Roe v. Delo,* 160 F.3d 416, 418 (8th Cir.1998). "Moreover, counsel has discretion to abandon losing issues on appeal." *Id.* As with his allegations against trial counsel, appellate counsel is given the discretion, regardless of the defendant's requests, to abandon losing issues on appeal. Given that the argument Hagler sought appellate counsel to make had already been decided against him by the Seventh Circuit, it was clearly not deficient performance for counsel not to make it on direct appeal.

In light of the foregoing, Hagler has not shown either deficient performance or prejudice based upon the actions of either trial or appellate counsel. Thus, his claim for ineffective assistance

of counsel fails and, thereby dooms his petition for relief pursuant to 28 U.S.C. §2255. Moreover, considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the Court DENIES a certificate of appealability. "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.' " *Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4 (1983)). Hagler has not made the requisite showing in these circumstances. Thus, no certificate of appealability shall issue.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

1. Defendant William Hagler's motion to vacate, set aside or correct sentence is DENIED. [DE 303].

2. A certificate of appealability is also DENIED. Defendant may, if he wishes to do so, seek a certificate from the court of appeals under Fed. R.App. P. 22.

SO ORDERED. This 31st day of December, 2014.

s/ William C. Lee
United States District Court